**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| ZHI YUAN CHIU, on behalf of himself and all others similarly situated in New York, | |
|---|---|
| *Plaintiff,* | **CLASS ACTION COMPLAINT**   **MATSUMOTO, M.J.** |
| vs. | **JURY TRIAL DEMANDED** |
| NVIDIA CORPORATION; ATI TECHNOLOGIES, INC., ADVANCED MICRO DEVICES, INC.; and JOHN DOES 1-100, | Case No. **07 1016** |
| *Defendants* | |

Plaintiff Zhi Yuan Chiu hereby brings this action on behalf of himself and all other similarly situated persons and entities who indirectly purchased graphics processing units and cards ("GPU") during a period beginning no later than December 1, 2002 and continuing to the present. Plaintiff seeks damages and other relief from Defendants' violations of N.Y. Gen. Bus. Law § 349, *et seq* and under common law as well as federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff, upon personal knowledge as to his own acts and status, and upon information and belief as to all other matters, alleges the following:

## INTRODUCTION

1. This case arises out of a long-running conspiracy extending from at least December 1, 2002 and continuing to the present (the "Class Period") among Defendants and their co-conspirators, with the purpose and effect of fixing prices, allocating market share, and committing other unlawful practices designed to inflate the prices of GPU sold indirectly to Plaintiff and other purchasers in New York. Plaintiff brings this Class Action pursuant to the

statutes of New York and the United States, specifically, N.Y. Gen. Bus. Law § 349, *et seq*, and Section 1 of the Sherman Act, 15 U.S.C. § 1, respectively.

2. Defendants and their co-conspirators have formed an international cartel to illegally restrict competition in the GPU market, targeting and severely burdening consumers throughout the United States, including in New York. The conspiracy has existed at least during the Class Period, and has affected billions of dollars of commerce for products commonly found in households and businesses throughout the United States, including New York.

3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants and their co-conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and coordinate price increases of GPU in New York.

4. The acts by Defendants in furtherance of the conspiracy have included the following wrongful conduct and horizontal agreements:

   (a) participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to prices for GPU;

   (b) participating in meetings and conversations in which Defendants and their co-conspirators allocated markets and customers for GPU;

   (c) participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to refrain from engaging in competitive bidding or to submit complementary and non-competitive bids for particular contracts to supply GPU and products containing GPU to various consumers;

   (d) exchanged sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

   (e) issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

   (f) facilitating, effectuating, implementing, monitoring, and concealing the contract, combination, and conspiracy to raise the

prices of GPU sold.

## JURISDICTION AND VENUE

5. Plaintiff brings this Class Action pursuant to N.Y. Gen. Bus. Law § 349, *et. seq.*

6. This Complaint is also filed under Section 16 of the Clayton Act, 15 U.S.C. § 26 to enjoin Defendants, and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy to restrain trade or commerce of GPU.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. The matter in controversy exceeds $5,000,000 exclusive of interest and costs when the claims of individual class members are aggregated, and is between citizens of different states. Venue is proper in the United States District Court for the Southern District of New York pursuant to 15 U.S.C. §15 and §22 and 28 U.S.C. §1391, as the Defendants reside, transact business or are found within this District, and/or a substantial part of the events giving rise to the Plaintiff's claims arose in this District.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 by virtue of Plaintiff's injunctive relief claims brought under the Clayton Act, 15 U.S.C. § 26. Jurisdiction is also proper under 28 U.S.C. § 1367 as all other claims arise from the same case or controversy as the Clayton Act claim.

9. Personal jurisdiction comports with due process under the United States Constitution and New York's long-arm statutes.

10. Without limiting the generality of the foregoing, Defendants (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) have:

    (a) transacted business in New York;

    (b) contracted to supply or obtain services or goods in New York;

(c) availed themselves intentionally of the benefits of doing business in New York;

(d) produced, promoted, sold, marketed, and/or distributed their products or services in New York and, thereby, have purposefully profited from their access to New York's markets;

(e) caused tortious damage by act or omission in New York;

(f) caused tortious damage in New York by acts or omissions committed outside such jurisdiction while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(g) committed acts and omissions which Defendants knew or should have known would cause damage in New York to Plaintiff and Class members while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(h) engaged in a conspiracy with others doing business in New York that caused tortious damage in New York; and

(i) otherwise had the requisite minimum contacts with New York obtaining the benefits of its laws and markets such that, under the circumstances, it is fair and reasonable to require Defendants to come to this Court to defend this action.

11. Plaintiff Zhi Yuan Chiu is a resident of New York. In addition, a substantial part of the trade and commerce, as well as the arrangement, contract, agreement, trust, combination, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiff's claims, occurred within New York, including, among other things, the indirect sale of GPU to Plaintiff and other members of the class at supra-competitive prices.

12. As a result of the manufacture, distribution, delivery and sale of Defendants' products to indirect purchasers within New York, directly or through their subsidiaries, affiliates or agents, Defendants obtained the benefits of the laws of New York and the markets of New York for their products.

## PARTIES

**A.  Plaintiff(s)**

13. Plaintiff Zhi Yuan Chiu is a resident of Queens, New York. During the time period covered in this Complaint, Plaintiff indirectly purchased GPU from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for GPU and has been injured by reason of the illegal conduct alleged herein.

**B.  Defendant(s)**

14. Defendant Nvidia Corporation ("Nvidia") is incorporated in Delaware with its principal place of business at 2701 San Tomas Expressway, Santa Clara, California 95050. Defendant Nvidia produced, promoted, sold, marketed, and/or distributed GPU to consumers throughout the United States, including New York, during the Class Period.

15. Defendant ATI Technologies, Inc. ("ATI") is a Canadian corporation with its principal place of business at 1 Commerce Valley Drive East, Markham, Ontario, Canada L3T 7X6. Defendant ATI produced, promoted, sold, marketed, and/or distributed GPU to consumers throughout the United States, including New York, during the Class Period.

16. Defendant Advanced Micro Devices, Inc. ("AMD") is incorporated in Delaware with its principal place of business at One AMD Place, P.O. Box 3453, Sunnyvale, California 94088-3453. Defendant AMD, through its acquisition of Defendant ATI, produced, promoted, sold, marketed, and/or distributed GPU to consumers throughout the United States, including New York, during the Class Period.

## ADDITIONAL DEFENDANTS

17. As additional information may come to light, Plaintiff reserves the right to add other Defendants as they become known to him.

18. The acts alleged in this Complaint were, upon information and belief, authorized, ordered or done by officers, agents, employees, or representatives of each Defendant while actively engaged in the management of its business or affairs.

## CO-CONSPIRATORS

19. Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiff, participated as co-conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

20. The true names and capacities, whether individual, corporate, associate, representative, or otherwise of defendants named herein as DOES 1 through 100 are unknown to Plaintiff at this time, and are therefore sued by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of DOES 1 through 100 when they become known to Plaintiff. Each of DOES 1 through 100 is in some manner legally responsible for the violations of law alleged herein.

21. The acts charged in this Complaint as having been done by Defendants and the DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

## CLASS ACTION ALLEGATIONS

22. This action is brought by Plaintiff on behalf of himself, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representative of a class ("the Class"). In particular, Plaintiff asserts that a class action is appropriate under Rule 23(b)(3).

23. The Class is defined as:

All persons or entities residing in New York who indirectly

purchased GPU or products containing GPU manufactured and sold by one or more of the Defendants during the Class Period. Excluded from the Class are: all federal, state, or local governmental entities; Defendants' subsidiaries and affiliates; all persons who purchased GPU directly from any Defendant or from any other manufacturer of GPU.

24. Although the exact size of the Class is unknown, the total number of Class members is in the thousands. Based upon the nature of the trade and commerce involved, joinder of all Class members would be impracticable.

25. Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no conflict with any other Class member and has retained competent counsel experienced in class action and antitrust litigation.

26. Common questions of law and fact exist, including:

    (a) whether Defendants conspired with each other and others to fix, raise, stabilize or maintain the prices of GPU;

    (b) whether Defendants' acts were unfair or deceptive;

    (c) whether the combination or conspiracy caused the prices of GPU to be higher than they would have been in the absence of Defendants' conduct;

    (d) the operative time period for the conspiracy;

    (e) whether Defendants' conduct caused injury to the business or property of Plaintiff and the Class, and if so, the appropriate measure of damages;

    (f) whether Defendants actively concealed the violation alleged herein; and

    (g) the appropriate nature of the class-wide equitable relief.

These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

27. Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein. The class action vehicle provides an efficient method for enforcement of the rights of the Plaintiff and the Class members, and such litigation can be fairly managed. Plaintiff knows of no unusual problems of management or notice.

28. It is desirable for the claims of the Plaintiff and the Class members to be adjudicated in a single proceeding to provide all claimants with a forum in which to seek redress for the violations of the laws of New York and the United States.

29. The difficulties that may exist in the management of the class action are far outweighed by the benefits of the class action procedure.

## FACTUAL ALLEGATIONS

30. GPU are highly specialized semiconductors that increase the speed, complexity and visual quality of digital images that are displayed on graphical interfaces. GPU technology was introduced during the early 1960s in some of the earliest computer displays; however, it became more widely available during the early 1980s with the advent of the personal computer. GPU are now found in desktop and notebook computers including professional workstations, servers and home media personal computers and in consumer electronics such as personal digital assistants, mobile phones, digital televisions and game consoles.

31. Defendants sell GPU through various channels including to original equipment manufacturers, original design manufacturers, system integrators, motherboard manufacturers, add-in board manufacturers, and retail outlets. GPU may be integrated into a computer's motherboard by means of an expansion slot or it may be embedded into a video card within the computer itself. Usually, a GPU will be upgraded when configuring a purchase from a computer manufacturer or as an aftermarket purchase.

32. Defendants' GPU are incredibly prevalent - one can find Nvidia's products in the world's leading electronics including Apple Inc., Dell Inc., Fujitsu Limited, Siemens AG, Gateway Inc., Hewlett-Packard Company, Lenovo Group Limited, LG Electronics, Inc., MEDION AG, Mitsubishi Electric, Motorola Inc., MPC Corporation, NEC Group, Samsung Electronics Co. Ltd.,

Sony Electronics Inc., Sony Ericsson Mobile Communication AB and Toshiba Corporation. System builders such as Alienware, Falcon Northwest, HCL Technologies, SAHARA Computer (PTY) Ltd. and Shuttle Computer Group Inc. also use Nvidia GPU in their products. Defendant Nvidia's GPU are also used by leading add-in board and motherboard manufacturers including ASUSTek Computer Inc., BFG Technologies, EVGA Corporation, GIGABYTE Technology Co., Ltd., Micro-Star International Co., Ltd., Palit Microsystems, (HK) Ltd, Point of View, and XFX.

33. Defendants, as industry leaders, hold numerous patents, and also license their technology to smaller manufacturers based on Defendants' specifications in exchange for royalties. According to a Nvidia press release, companies that exclusively manufacturer GPU for Nvidia include: AOpen Inc., Abit Co., Ltd., PSA Walton Chaintech Corporation, Creative Technology Ltd, Gainward Co., Ltd., Gigabyte Technology, Co., Ltd., InnoVISION Multimedia Ltd., Leadtek Research, Inc., Micro-Star International Co., Ltd., Palit Microsystems, (HK) Ltd., PNY Technologies, Inc., SPARKLE Computer Co., Ltd., and TerraTec Electronic GmbH. Similarly, several companies manufacture video cards based on ATI specifications including Sapphire Inc., Diamond Multimedia Inc., PowerColor Computer Inc. and VisionTek, Inc. Only ASUSTek Computer Inc. manufacturers both Nvidia and ATI GPU.

34. The Defendants are leaders in the design and manufacture of GPU. Collectively, the Defendants own or control over 90% of the stand alone GPU that are available for purchase either as standalone video cards or in preassembled computers. According to industry reports, Nvidia alone leads with a 55% share of the market.

35. In October 25, 2006, Defendant ATI merged with Defendant AMD, combining ATI's strengths in graphics, chipsets and consumer electronics with AMD's expertise in microprocessors. The merger was valued at $5.4 billion. Under the terms of the transaction, Defendant AMD

acquired all of the outstanding common shares of Defendant ATI for a combination of approximately $4.3 billion in cash and 58 million shares of AMD common stock. All of ATI's patents and licensing agreements were transferred to AMD. With AMD's acquisition of ATI, AMD entered into the graphics processor business.

36. Defendant Nvidia states in its Amended Annual Report filed with the U.S. Securities and Exchange Commission on November 29, 2006, that it is the "worldwide leader in programmable graphics processor technologies." According to the report, Nvidia earned approximately $2.375 billion in revenues. The revenues from its GPU business increased by 22.6% to $1.7 billion for fiscal year 2006 compared to $1.4 billion for the previous fiscal year.

37. Defendant ATI also stated in its 2005 Annual Report that it is one of the world's leaders in graphics processor technology, earning $2.22 billion in revenues and selling 115 million units.

38. The GPU market is conducive to the kind of anticompetitive practices alleged in this Complaint. The market is oligopolistic and is characterized by high technological barriers to entry including research and development expenses and manufacturing costs. These high barriers to entry are in part due to the capital-intensive nature of the GPU industry and the high volumes of production required to achieve economies of scale.

39. Defendants have been able to exclude competition and maintain their monopoly over GPU by colluding and conspiring to fix, raise, maintain, and/or stabilize prices and royalties. Defendants are thus able to charge supra-competitive prices for GPU. As a result of Defendants' misconduct and anti-competitive behavior, consumers have to pay supra-competitive prices for GPU.

40. The United States Department of Justice ("DOJ") recently launched an investigation into anticompetitive practices by GPU manufacturers. On or about November 30, 2006, the DOJ

subpoenaed Defendants Nvidia and AMD.

41. Both AMD and Nvidia have publicly confirmed that they have received a subpoena in connection with potential antitrust violations related to graphic processors and cards. A spokesperson for Nvidia said that the DOJ requested records back to the 1990s, including market studies, volume price agreements and other documents. The spokesperson noted that "[i]t's a fairly broad request."

42. Price fixing among manufacturers in the high-technology industry has also occurred in other product markets, as evidenced by the conspiracy in the Dynamic Random Access Memory market and the most recent alleged conspiracies in the Static Random Access Memory and Liquid Crystal Display markets. Because there are few suppliers in the chip industry and an open flow of communication between competitors, one industry analyst stated: "If the DOJ wanted to, it could just go down every line in the semiconductor industry and find the same issue."

## TRADE AND COMMERCE

43. The activities of Defendants and their Co-Conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the commerce of GPU throughout the United States, including New York.

44. During the Class Period, Defendants manufactured and sold substantial quantities of GPU to businesses and consumers throughout the United States, including New York. Those businesses resold and/or incorporated the GPU into other products including, but not limited to, desktop and notebook computers including professional workstations, servers and home media personal computers and in consumer electronics such as personal digital assistants, mobile phones, digital televisions and game consoles and then marketed and sold those goods to businesses and consumers throughout the United States, including New York.

45. The contract, combination, and conspiracy consists, upon information and belief, of a continuing agreement, understanding, and concert of action between and among Defendants and their Co-Conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases for the sale of GPU throughout the United States, including New York.

46. The acts in furtherance of the conspiracy by Defendants have included, on information and belief, the following wrongful conduct and horizontal agreements:

(a) participating in meetings and conversations on a periodic basis during the Class Period in which Defendants and their Co-Conspirators discussed and agreed to fix, raise, stabilize, and maintain the prices for GPU;

(b) participating in meetings and conversations on a periodic basis during the Class Period in which Defendants and their Co-Conspirators discussed and agreed to allocate markets and customers for GPU;

(c) participating in meetings and conversations on a periodic basis since at least during the Class Period in which Defendants and their Co-Conspirators discussed and agreed to refrain from engaging in competitive bidding, or to submit complementary and non-competitive bids, for particular contracts to supply GPU and/or products containing GPU to various customers;

(d) exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

(e) issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

(f) facilitating, effectuating, implementing, monitoring and concealing the contract, combination, and conspiracy to raise the prices of GPU sold.

47. For the purposes of formulating and effectuating the aforesaid contract, combination, and conspiracy, Defendants and their Co-Conspirators did those things which they

combination, and conspiracy in restraint of trade or commerce of GPU.

70. Plaintiff and the Class have and will continue to be injured by Defendants' conduct in violation of the antitrust laws of the United States and N.Y. Gen. Bus. Law § 349, *et seq.*, in the absence of injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, and respectfully requests the Court:

1. Certify this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Adjudge and decree that the unlawful conduct, contract, conspiracy or combination alleged herein:

   a. A deceptive act or practice in violation of N.Y. Gen. Bus. Law § 349, *et seq.* identified in the First Count for Relief herein;

   b. Acts of unjust enrichment as set forth in the Second Count for Relief herein; and

   c. In violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3. Award Plaintiff and the Class members actual damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs. Plaintiff expressly waives all other damages available under N.Y. Gen. Bus. Law § 349, *et seq.*

4. Award Plaintiff and the Class members restitution and disgorgement of profits obtained by Defendants as a result of their violations of common law principles prohibiting their acts of unfair competition and acts of unjust enrichment;

5. Award Plaintiff and the Class members the costs of the suit, including reasonable

attorney's fees;

6. Award Plaintiff and the Class members a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants, and their officers, agents, employees, or representatives from engaging in this unlawful contract, combination, and conspiracy in restraint of trade or commerce;

7. Award Plaintiff and the Class members pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law; and

8. Grant such other, further or different relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims for which he is entitled to a jury trial.

DATED: Bedford Hills, New York
       March 9, 2007

By: *Kenneth Walsh*
Kenneth G. Walsh (KW 1654)
STRAUS & BOIES, LLP
2 Depot Plaza, Suite 203
Bedford Hills, New York 10507
Telephone: (914) 244-3200
Facsimile: (914) 244-3260

David Boies, III
Timothy D. Battin
Ian Otto
Nathan Cihlar
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor
Fairfax, Virginia 22030
Telephone: (703) 764-8700
Facsimile: (703) 764-8704

*Attorneys for Plaintiff Class*